### ESBER v NEW YORK LIFE INS CO

Ohio Common Pleas, Stark Co

### OPINION

By SWEITZER, J.

Preliminary to consideration of the demurrer in question, the following observation as to the pleadings involved are made:

The petition avers among other things, the making of a contract or policy of insurance on August 29, 1921, by Namer Esber, the insured, and The New York Life Insurance Company, the insurer, the beneficiaries being Natchey Esber, the wife, and Louis and Theodore Esber, the children of the insured, and that said contract contained a certain total, permanent disability benefit clause. It avers, too, that about June 1, 1935, the insurer received at its home office proof of permanent, total disability of the insured, that the insurer is in possession of an exact copy of the contract or policy in question, that the insured has performed all things to be performed by him, but that the insurer has refused to pay to the insured the disability benefits due him, under said policy. The petition prays for judgment for benefits plaintiff claims due him under said contract-policy, which he claims is one hundred dollars a month, for the months of June, July and August, 1935, and for other relief.

To the petition the insurer filed its answer and cross-petition, the second defense of which answer and its attached cross-

petition were attacked by a motion to strike, filed by the insured. While this motion raised a question similar to the one to be determined in connection with the demurrer under consideration. it did not raise the precise question. This court in a written memorandum furnished counsel for the parties, reference to which is made, sustained said motion and granted insurer leave to file its amended answer and cross-petition which were later filed, the insurer, however, theretofore having made said Natchey Esber, wife, and Louis and Theodore Esber, children, of insured, the beneficiaries named in the policy, new parties defendant.

In this amended answer the insurer, for its first defense to the petition, admits the making of the original contract or policy of insurance, and that it contained said certain provisions relating to total, permanent disability benefits. All further allegations of the petition are denied. For its second defense the insurer after adopting the averments of its first defense, alleges that the contract-policy in question on August 29, 1934, lapsed for non-payment of premium. It is then alleged the policy contained a certain quoted provision for re-instatement and that on November 30, 1934, the insured applied in writing for re-instatement of the policy, the insurer setting out a copy of said application. Then it is averred the insurer believing and relying on the truth of the statements of the insured contained in said application, re-instated said policy on December 1, 1934. The truth of said statements is denied, and it is averred the insured knew same were untrue, and made them fraudulently, etc., etc. It is also averred that the insured "had in his possession a copy of said application for reinstatement ever since November of 1935, it having been delivered to him by the sheriff of Stark County, Ohio," and further that on the 11th day of August, 1936, the insurer "did serve by registered mail on plaintiff and the new defendants named herein, a copy of said application for reinstatement."

The cross-petition filed in connection with the amended answer August 19, 1936, asks that the policy be cancelled on the ground of said alleged fraud on the part of the insured in connection with securing its reinstatement.

To the second defense of the amended answer and to the cross-petition attached thereto, the insured demurs on the ground, said second defense does not constitute a defense in law, and that said cross-petition does not state a cause of action.

The pertinent question seems to be: In the light of the delay on the part of the insurer in furnishing the insured a copy of the written application for reinstatement of the policy in question, may the insurer at this date, after the cause of action accrued and after suit has been instituted against it to recover total, permanent disability benefits, entirely cure its default resulting from said delay on its part, by furnishing copy, and plead said alleged misrepresentations and fraud in connection with said application for reinstatement, as a defense to the petition, and also as a new cause of action to cancel and declare void, the policy?

The records of this court, so far as they relate to the filing of pleadings and motion in this case, disclose the following:

1935 August 31—Petition filed; 1935 October 25—Answer and cross-petition filed; 1935 November 23—Motion to strike filed; 1936 August 19—Amended answer and cross-petition filed; 1936 September 18—Demurrer to second defense of amended answer and cross-petition filed; 1936 September 18—Reply to first defense of amended answer filed.

Under concession of insured's amended answer "about the 30th day of November, 1934, the said Namer Esber made written application to plaintiff to reinstate said policy of insurance;" also "defendant says that believing and relying on the truth of said answers to said questions it reinstated said policy December 1, 1934."

Thus, it appears the insurer received said written application for reinstatement about November 30, 1934, reinstated said policy December 1, 1934, and, also by averments of its amended answer, made no attempt or effort to comply with the requirements of the first sentence of §9389, GC, until after this cause of action accrued and this suit was instituted, and then not until "since November of 1935," a period of approximately one year. Do the acts of the insurer engaged in by it since plaintiff's cause of action accrued and this suit was instituted. averred in its amended answer, cure its admitted default, to the extent that the truth of the statements of the insured, etc. contained in his application for reinstatement of the policy in question, becomes, in law, material to the determination of this law-suit? Answering this question necessitates interpretation 'of §9389, GC.

Reference to 74 Ohio Laws, page 181, dis-

closes that §9389, GC, as originally enacted began with the words "that from and after July 1, eighteen hundred seventy-seven." Thus, said §9389 GC applies, only, to insurance contracts executed since and after July 1, 1877; and said §§9387 and 9388 GC, apply, only, to contracts in existence at the time the act was passed. Hence §§9387 and 9388 GC are of importance here, only to the extent they assist in determining the meaning of §9389 GC. See New York Life Insurance Co. v Goerlich, 11 Federal Reports, Second Series, page 838. Circuit Court of Appeals, Sixth Circuit, March 12, 1926, reversing District Court of the U. S. for the Western Division of the Northern District of Ohio.

Search for statutes of other states, identical or similar in language or meaning to §9389, GC, and decisions construing same, has been unavailing. Numerous statutes and decisions applying to original applications for policies have been found, but none sufficiently broad in scope to compare with the Ohio statute, in its application to this case, which comprehends "complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy." Thus, in construing the section, it seems, no aid can be had from decisions in foreign jurisdictions.

The following Ohio cases relate to certain features of these three sections of the code: **Dickmeir v Ins. Co., 4 N. P. 13; Metropolitan Life Ins. Co. v Howle, 68 Oh St, 614; Prudential Ins. Co. v Gilligan, 7 C.C. (N.S.) 397; Mutual Life Ins. Co. v Hoffman, 13 C.C. (N.S.), 127; Andrews v Insurance Co., 7 N. P. 322; Insurance Co. v Bennett, 45 Oh Ap 498 (15 Abs 324); and Mutual Life Ins. Co. v Svonavec, 32 Oh Ap 195,** but none of these cases assume, even, to construe the section in the relation here involved. Had specific reasons for the conclusion quoted below from page 197 of the last cited case, been given by the court, the decision might be helpful in this case:

"It is urged in behalf of plaintiff in error that this section is inapplicable for the reason that after the death of Mary Svonavec, the company delivered a full and complete copy of the application. In our opinion the language of the statute contemplates a return of the application simultaneously with the delivery of the policy itself."

Paragraph one of the syllabus is as follows:

"Sec 9389, GC, requiring insurer to return copy of application with and as part of policy issued by it to person taking policy, contemplates return of application simultaneously with delivery of policy itself, not after death of insured, to enable insurer to set up false representations in application as defense to action on policy."

Thus, this decision carried the construction of the statute to the point that the insurer is under obligation to return copy of the application to the person insured; and that return of it to the beneficiary, after death of the insured, does not warrant the insurer to avail himself of denying the truth of the statements contained in the application. Without doubt, the statute contemplates the return of the copy simultaneously with, and as part of the policy, and to the insured during his lifetime, but if effect is to be given to the second and third sentences of §9389 GC, the mere failure to return the copy at the specified time, in itself, does not necessarily prevent the insurer from availing itself of the use of the untruth of the document.

Apparently, construction of the statute for the purposes of the demurrer in question, must be predicated on the language of §9389 GC, illuminated by §§9387 and 9388 GC, in the light of the purpose for which the sections were enacted, stated by the General Assembly passing them, to be, "for the better protection of policy holders in life insurance companies."

Secs 9387 and 9388 GC are clear and unambiguous. §9387 GC declares it to be the law of the state, first, that a holder of a policy issued before the sections in question were enacted, shall be entitled to be furnished by the insurer with a copy of the documents named in the statute, and, second, that upon demand of the insured, the insurer shall make and forthwith furnish same to the insured. §9388 GC prescribes the effect of failure on the part of the insurer to furnish the copy after demand for same, to be that if the insurer fails or neglects for thirty days to furnish the copy, it shall be forever barred from setting up by way of defense, the document in question.

Sec 9389 GC applying to policies issued since the section became effective, in which class the policy here involved belongs, reads as follows:

"COPIES OF APPLICATIONS TO ACCOMPANY POLICIES ISSUED—Every

company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a full and complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects so to do, so long as it is in default for such copy, shall be estopped from denying the truth of any such application or other document. In case such company neglects for thirty days after demand made therefor, to furnish such copies, it shall be forever barred from setting up as a defense to any suit on the policy, any incorrectness or want of truth of such application or other document."

This section consists of three sentences. The first sentence appears to be clear, and to admit of no controversy as to its meaning. It prescribes that the insurer "shall return with, and as part of any policy issued" a full and complete copy of the document. While it may not so appear in the amended answer under consideration here, it was conceded by counsel for the parties in oral argument of the demurrer, the policy in question has been in the possession of the insured at all times since it was issued. Hence, a copy of the application for reinstatement could not have been furnished the insured "with" the policy, upon reinstatement of same December 1, 1934. But a copy could have been furnished him "as part of" the policy which, no doubt, would constitute compliance with the requirement prescribed in the first sentence of the section. Now what is the effect of failure to comply with the requirement of the first sentence of this section?

The second and third sentences embody the effect, and are not as easily disposed of as the requirement of the first sentence. If the insurer may neglect furnishing a copy until thirty days after demand for it, is made, then furnish it, and utilize the untruth of it for defensive purposes, in what manner do the requirements contained in the first and second sentences assist "for the better protection of policy holders in life insurance companies."

Can the second and third sentences be construed in a manner that effect will be given to the requirements contained in each, and a construction arrived at that will be in harmony with the purpose for which the statute was enacted? In sentence two is observed this language: "so long as it is in default for such copy, shall be estopped from denying the truth of any

such application;" and in sentence three, in case it "neglects for thirty days after demand made therefor, to furnish such copies, it shall be forever barred from setting up as a defense to any suit on the policy any incorrectness or want of truth, etc."

Obviously, the General Assembly did not intend that every failure on the part of an insurer to furnish the copy at the very earliest moment possible, should effect a permanent bar to the use of its untruth. Nor, in our opinion, did it intend to permit an insurer to neglect furnishing the copy under all circumstances until thirty days after demand therefor, without suffering the penalty provided by the section. Somewhere between these extremes lies the mean, the reasonable time under the circumstances, within which the copy must be furnished by the insurer, if it is to escape being penalized. Surely, the legislature had in mind some rule from which we may determine just what in each case, the words "so long as it is in default for such copy," appearing in the second sentence of §9389 GC, mean.

Does it not seem that the legislature had in mind, so far as the requirement of the second sentence is concerned, the status of the policy-contract at the precise time the cause of action accrued; and that after the cause of action accrued, the provision contained in the third sentence so far as the accrued cause is concerned, is of no avail to the insurer? Obviously the provision of the third sentence is meant for the benefit of the insured, not the insurer. It provides a means whereby the insured may, upon demand, at thirty days therefrom, have the status of his policy-contract fixed, so far as any documents held back by the insurer are concerned.

In the case under consideration, plaintiff's cause of action accrued in advance of furnishing of the copy by the insurer. By admission of the insurer, it was sued and service had upon it, a considerable time before the insurer made any attempt to return a copy of the document in question.

In the opinion of the court the return alleged in the second defense of its amended answer came too late, and the insurer is not entitled to utilize the want of truth of the document as a defense to plaintiff's petition.

Coming next to the demurrer as it affects the insurer's cross-petition. The insurer as indicated admits a default of approximately a year in returning the copy of the document in question, that is, that

it did not return same for approximately a year after the time fixed for its return in the first sentence of -§9389, GC. But as earlier observed, the court does not believe failure to return copy at the precise time specified, in and of itself, necessarily bars its use as part of the contract. Applying the rule heretofore followed, the court believes the demurrer to the cross-petition should be overruled.

Accordingly, the demurrer to the second defense of the answer is sustained; and the demurrer to the cross-petition, overruled. Counsel for the parties may prepare and present for approval, an entry drafted in conformity to this opinion, preserving adequate exceptions to the parties.